commenced;" and as here used, the word "process" is equivalent to the word "proceedings." The word "process" is used as synonymous with the word "proceedings" in the first process act of September 29, 1789 (1 Stat. 94, § 2), passed only five days after the judiciary act. This circumstance tends to confirm the view above suggested, but its correctness may, perhaps, be more satisfactorily shown by other considerations.

If it be sufficient, as maintained by the defendant, simply to file or enter a copy of the original process, how, let it be asked, is the United States court to know that any order of removal was ever made or denied by the state court? for such a copy cannot of course, give any information on these points. If a copy of the original declaration or pleading on the part of the plaintiff is not required to be entered in the circuit court, how is that court to know what the "matter in dispute" is, or its value? and if a new declaration, or petition, or bill be filed, how is it to know that it is the same matter which was set up in the like pleadings filed in the state court? If a copy of the petition for removal is not required, how is the court of the United States to know whether it made a case entitling the party to a removal and authorizing it to take jurisdiction? Since, then, it is absolutely necessary that one of the parties should put the United States tribunal in possession of these data, it is reasonable to construe the act to require this to be done by the party who sought the removal, and not by his adversary.

The practice of the court will be conformable to these views. It will also be the practice that when the party applying for the removal shall fail, within the time prescribed by statute, to enter a complete transcript of the papers and proceedings in the state court, to permit the adverse party to file the same or the omitted parts thereof, unless cause be shown to the contrary, and the suit will stand and be proceeded in, the same as if all the papers had been filed by the applicant for removal, or in such manner as may be otherwise ordered by the court.

Guided by these suggestions, the parties may take such further steps as they see fit, and meantime the motion to remand will stand denied, with leave to renew it on other grounds before, or on the same grounds after, a certified copy of the papers and proceedings in the state court shall have been entered or filed herein. Ordered accordingly.

NOTE. See Sweeney v. Coffin [Case No. 7,-686], construing other provisions of section 12 of the judiciary act, as to the right to remove, and construction of various statutes on that subject. See, also, Sands v. Smith [Case No. 12,305]; Case v. Douglas [Id. 2,491]; Webster v. Crothers [Id. 17,334]; Garden City Manuf'g Co. v. Smith [Id. 5,217]; Beecher v. Gillett [Id. 1,225]. Under the act of July 27, 1866, defendants claiming the right of removal need not

join, but may apply separately as they are served with process or otherwise brought into court. Fisk v. Union Pac. R. Co. [Cases Nos. 4,827, 4,828], South. Dist. N. Y., per Nelson and Blatchford, JJ.

McBRATNEY (USHER v.). See Case No. 16,805.

## Case No. 8,662.

### In re McBRIDE.

[19 N. B. R. 452.] [1]

District Court, E. D. Michigan. July 1, 1878.

SUBROGATION—CHECK RECEIVED BY REVENUE OFFICER—RIGHTS AGAINST DRAWER.

A United States revenue officer must account to the government, in lawful money, for all sums received by him as such officer. And, if he make good to the government, by payment, the amount of a dishonored check which he had received from a government debtor, he is a guarantor on behalf of such debtor, of a most meritorious character, and will be entitled to be subrogated to all the rights of a guarantor in any proceeding to collect the amount.

The register certified that on the 25th day of January, 1878, Charles R. Wing proved on behalf of, and in the name of the United States of America, a claim against said bankrupts [James G. McBride, Caleb Ives, and Seth L. Carpenter] in the sum of two thousand and ninety dollars and forty cents, for revenue stamps sold by said Wing as the deputy of H. B. Rowlson, collector for the Third revenue district of Michigan; that the assignee instituted proceedings under general order 34 for the re-examination of the claim; pending which, Wing filed a petition to be subrogated to the claim as proved in favor of the United States.

Both proceedings were heard together, testimony was taken, and the parties heard by counsel; the assignee by Mr. T. Romeyn, and Wing by Mr. A. Russell. The register entered an order dismissing the petition for the re-examination of the claim, and that Wing be subrogated to the rights and interests of the United States; which order, at the request of the assignee, the register certified into court for determination by the district judge.

By HOVEY K. CLARKE, Register:

The principle of subrogation is well stated in the article under this title in Johnson's Cyclopedia, thus: "Whenever a person secondarily liable for a debt pays the same, the demand is not thereby absolutely discharged; but he, at once, by the operation of the equitable doctrine, succeeds or becomes subrogated to all the rights, remedies, and securities which the creditor held against the debtor primarily liable, and may enforce the same as a creditor against such debtor in order to reimburse himself for the outlay which he has made on behalf of that party." The illustrations usually given of the application of

[1] [Reprinted by permission.]

this principle are those of mortgagees, sureties, and guarantors.

In this case, Wing, as deputy collector, had sold to the bankrupts revenue stamps to the amount of two thousand and ninety dollars and forty cents. At the time of the sale of one thousand dollars of these stamps, two checks on a firm of bankers in Detroit, drawn by C. Ives, one of the bankrupts, were delivered to Wing, one for five hundred dollars and one for five hundred and ninety dollars and forty cents, both of which were dishonored on presentation. Stamps to the amount of one thousand dollars more were delivered on the day of the failure of the bankrupts, to their shipping clerk, on his statement that Mr. Ives was ready to pay for them. Much of the testimony taken seems to have for its purpose to show some arrangement between the bankrupts, Mr. T. E. Wing, the father and bondsman of the deputy collector, and Mr. C. R. Wing; but, whatever it shows, the fact is left clear that stamps to the value claimed were delivered to the bankrupts, and they have not been paid for. The testimony also shows that the government makes no claim against the bankrupt's estate, because the amount has been assumed and paid by Mr. Wing, the deputy collector, either out of his own money, or by means furnished by his father, who is his bondsman. He made this payment because he had become legally liable for the value of the stamps which he had delivered to the bankrupts, and for which they had not paid. This liability results from his duty as a public officer to take nothing but money. That public officers do constantly take checks upon banks as money, and that their own and the convenience of business men dealing with them is thereby promoted, is, probably, well known. But if they should refuse to take anything but coin, or the currency furnished by the government, and should then be imposed upon by counterfeits, their liability would be the same as it is upon a protested check; and thus whatever they take, they become, as public officers, guarantors to the government, on behalf of the parties with whom they have dealings, that that which they treat as money shall produce money to the government. A collector in the position now occupied by Mr. Wing is a guarantor of the most meritorious character. If the government were now prosecuting this claim, it would be paid in full, and it seems to me inequitable to allow the general creditors of the bankrupts' estate to be benefited at the expense of the deputy collector, who, to make good his guaranty to the government, has assumed and paid the sum owing by the bankrupts' estate.

T. Romeyn, for assignee.
A. Russell, for claimant.

BROWN, District Judge, approved the opinion of the register, and directed an order to be entered subrogating Wing to the rights of the United States as a preferred creditor.

## Case No. 8,663.

### In re McBRIDE.

[1 Wkly. Notes Cas. 16.]

District Court, E. D. Pennsylvania. Oct. 1, 1874.

BANKRUPTCY PRACTICE—REGISTER'S FEES—NO ASSETS IN HANDS OF ASSIGNEE.

The register reported to the court that he had received no payment for his services, except the deposit fee of $50, no assets having come into the hands of the assignee, and petitioned the court to make an order upon the intervening and petitioning creditors for the payment of his fees, as provided in the 47th section of the bankrupt act [of 1867 (14 Stat. 540)].

THE COURT thereupon ordered the petition to be set down for a hearing, and notice to be given to the intervening and petitioning creditors, as well as to the bankrupt.

## Case No. 8,664.

### In re McBRIDE.

[1 Wkly. Notes Cas. 42.]

District Court, E. D. Pennsylvania. Oct. 21, 1874.

BANKRUPTCY PRACTICE—COSTS.

Proof of notice to petitioning creditors being made, THE COURT ordered that the clerk tax register's and clerk's costs and fees, and that the bankrupt pay the same.

McBRIDE (OSBORN v.). See Case No. 10,-593.

McBRIDE (PROCTER v.). See Case No. 11,-441.

## Case No. 8,665.

### In re McBRIEN.

[2 Ben. 513;[1] 2 N. B. R. 197 (Quarto, 73).]

District Court, S. D. New York. Oct. 27, 1868.

EXAMINATION OF BANKRUPT—ORDER—AFFIDAVIT.

Where the assignee of a bankrupt applied for an order for his examination, which was granted, and, after his examination under it had been commenced, the bankrupt moved to vacate the order because it was not founded on affidavit, which motion the register denied: *Held*, that the register's decision was correct.

[Cited in Re Solis, Case No. 13,165; Re Dole, Id. 3,965.]

[2] [The application of John Sedgwick, assignee, &c., of the above named bankrupt, shows: That he is the assignee of the estate and effects of the above named bankrupt, and that he applies for an order that the above named bankrupt attend before James F. Dwight, register, and submit to the examination required by the twenty-sixth section of

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]
[2] [From 2 N. B. R. 197 (Quarto, 73).]